**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **B & C CONSTRUCTION AND EQUIPMENT, LLC** | § § § | **PLAINTIFF** |
| **v.** | § § | **Civil No. 1:12CV007HSO-RHW** |
| | § § | |
| **DOMINIC OVELLA** | § | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND  DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BEFORE THE COURT is a Motion for Summary Judgment [96] filed by B&C Construction and Equipment, LLC ["B&C"] on March 15, 2013, pursuant to Federal Rule of Civil Procedure 56.  Dominic Ovella ["Ovella"] filed a Response [108] on April 18, 2013, and B&C filed a Rebuttal [116].   Also before the Court is Ovella's Motion for Partial Summary Judgment [100] filed March 18, 2013, pursuant to Federal Rule of Civil Procedure 56.  B&C filed a Response [112] on April 18, 2013, and Ovella filed a Rebuttal [115].  After due consideration of the Motions, Responses, Rebuttals, the record and pleadings on file, and relevant legal authorities, the Court finds that B&C's Motion for Summary Judgment [14] should be granted in part and denied in part and Ovella's Motion for Partial Summary Judgment [100] should be denied.

### I. FACTS AND PROCEDURAL HISTORY

On July 19, 2012, the Court issued a Memorandum Opinion and Order [43] in

this case, which granted in part and denied in part Ovella's Motion to Dismiss,[1] and B & C's unjust enrichment claim was dismissed with prejudice on *res judicata* grounds.   The Court further determined that because B & C's remaining claims for breach of contract, breach of the duty of good faith and fair dealing, and tortious breach of contract were dismissed without prejudice by United States District Judge Louis Guirola in *Dominic Ovella v. B & C Construction and Equipment, LLC*,  No. 1:10-CV-285 (S.D. Miss. February 13, 2012), the doctrine of *res judicata* did not bar those claims.

On September 7, 2012, B & C filed a First Amended Complaint [55] against Ovella[2] asserting the following three claims: (1) breach of contract; (2) breach of the duty of good faith and fair dealing and misrepresentation of intentions; and (3) tortious breach of contract.   B & C filed its Motion for Summary Judgment on March 15, 2013, and Ovella filed a Motion for Partial Summary Judgment on March 18, 2013.

## II. DISCUSSION

A.   Legal Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is

---

[1]The facts and procedural history of this case were previously set forth in the Court's Memorandum Opinion and Order [43] granting in part and denying in part Ovella's Motion to Dismiss.   They will not be repeated here; however, the Court adopts and incorporates them by reference.   The Court will focus only on the facts pertinent to resolution of the instant Motions.

[2]Kathy Ovella was not named in the Amended Complaint and was terminated from these proceedings on September 7, 2012.

appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Melton v. Teachers Ins. & Annuity Ass'n of America,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). However, if the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co,* 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp.*, 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient

for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). "The court has no duty to search the record for material fact issues." *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

Because this is a case of diversity jurisdiction, the Court must apply state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (1938); *Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999).

> The core of what has become known as the '*Erie* Doctrine' is that the substantive law to be applied by a federal court in any case before it is state law, except when the matter before the court is governed by the United States Constitution, an Act of Congress, a treaty, international law, the domestic law of another country, or in special circumstances, by federal common law.

*Hanley v. Forester*, 903 F.2d 1030, 1032 (5th Cir. 1990).

B.    Analysis

1.    B & C's Motion for Summary Judgment

B & C moves for judgment as a matter of law on the grounds that the doctrines of collateral estoppel and *res judicata* bar Ovella's defenses to the breach of contract claim asserted in the Amended Complaint. B & C contends that because issues and evidence surrounding the alleged breach of contract and negligence were submitted to the jury and resolved against Ovella during the trial held in *Dominic Ovella v. B & C Construction and Equipment, LLC*, No. 1:10-CV-285 (S.D. Miss. February 13, 2012), Ovella is precluded from asserting the same facts as defenses in

this case.  B & C contends that all of Ovella's defenses:

> are based upon facts identical to those litigated in the prior action between the same parties. All such facts were fully and fairly litigated, were necessary and essential to the resulting judgment and were presented to the jury in the prior suit as the foundation for Ovella's claims of breach of contract, negligence and violation of the New Home Warranty Act causes of action.

Pl.'s Mem. in Supp. of Mot. for Summ. J. [97] at p. 11.

Ovella counters that "at the close of all evidence in the 2010 Lawsuit, the Court dismissed B & C's breach of contract claim, which mirrors its claims in this case." Ovella argues that "B & C is not entitled to the application of collateral estoppel in this case due to its own misconduct."  Def.'s Mem. in Supp. of Resp. [109] at p. 12.

"We apply federal law to the question of the *res judicata* or collateral estoppel effect of prior federal court proceedings, regardless of the basis of federal jurisdiction in either the prior or the present action."  *Jackson v. FIE Corp.*, 302 F.3d 515, 529 n.5 (5th Cir. 2002)(quoting *Avondale Shipyards, Inc. v. Insured Lloyd's*, 786 F.2d 1265, 1269 n.4 (5th Cir. 1986)).

    a.    <u>*Res Judicata*</u>

Under the doctrine of *res judicata*, once a judgment is rendered that judgment is thereafter considered the full measure of relief to be accorded between the same parties on the same claim or cause of action.  *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978)(internal quotations and citations omitted).  "*Res judicata* prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were

asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979).

The following elements must be present before the doctrine of *res judicata* applies:

> (1) the parties are identical in both actions; (2) the prior judgment was rendered by a court of competent jurisdiction; (3) the prior judgment was final on the merits; and (4) the two cases involve the same cause of action.

*Travelers Ins. Co. v. St. Jude Hosp. of Kennar, LA*, 37 F.3d 193, 195 (5th Cir. 1994).

In the present case, the first element is present because B & C and Ovella are identical parties to the first litigation.  As for the second and third elements, this Court had jurisdiction and a final judgment on the jury verdict was entered in favor of B & C.   However, the fourth element, that the two cases involve the same claim or cause of action, is lacking.  While both cases concerned an alleged breach of the same construction contract, Ovella was the plaintiff asserting the breach in the first cause of action while B & C is the plaintiff asserting breach of contract against Ovella in the present action.  As such, the doctrine of *res judicata* does not operate to bar the present claims or defenses raised in this case.

b.   Collateral Estoppel

Collateral estoppel, or issue preclusion, precludes relitigation of issues actually adjudicated and essential to the judgment in prior litigation involving a party to the first case. *Allen v. McCurry*, 449 U.S. 90, 94 (1980).  "When a federal court sitting in diversity is considering the collateral estoppel effect of a prior federal

-6-

court judgment, Courts in the Fifth Circuit apply federal common law." *Walker v. Kerr-McGee Chem. Corp.*, 793 F. Supp. 688, 697 (N.D. Miss. 1992). The doctrine of collateral estoppel effectively establishes questions of law or fact that are subject of a final judgment for purposes of a later lawsuit where the following elements are present: (1) a party is seeking to relitigate a specific issue; (2) the issue has been litigated in a prior suit; (3) the issue was actually determined in the prior suit; and (4) the determination of the issue was essential to the judgment. *Walker,* 793 F. Supp. at 694-95.

In his opposition to B & C's Motion, Ovella seemingly continues to take issue with the outcome of the former litigation, arguing that:

> [t]he jury in the 2010 Lawsuit returned, in essence, a general verdict for the B & C, which makes it virtually impossible to determine the exact basis of its decision—i.e. which of the almost 150 disputed issues of facts the jury decided in order to reach its verdict. Had the jury been provided written questions to answer to pursuant Fed. Rule Civ. P. 49 or had it been provided a more specific verdict form, the answer to this question would be crystal clear.

*Id.* at p. 15.

Ovella further submits that the "issue of the proper amount of credits owed to Mr. Ovella could not have been necessary to the jury's verdict in the 2010 lawsuit and should not be precluded here." Def.'s Mem. in Supp. of Resp. [109] at p. 17.

The following special interrogatories were submitted to the jury in the prior litigation for consideration of the claims Ovella advanced against B & C:

**Question Number One**

      **1(A)**  Do you find that Dominic and/or Kathleen Ovella have proven, by a preponderance of the evidence, that B & C Construction and Equipment, LLC negligently constructed their home?

Answer "Yes" or "No:"  <u>  No  </u>

*Answer the remaining portions of Question Number One only if you answered "yes" to 1(A).  If you answered "no," proceed to Question Number Two.*

**Question Number Two**

      **2(A)**  Do you find that Dominic and/or Kathleen Ovella have proven, by a preponderance of the evidence, that B & C Construction and Equipment, LLC made negligent misrepresentations?

Answer "Yes" or "No:"  <u>  No  </u>

*Answer the remaining portion of Question Number Two only if you answered "yes" to 2A.  If you answered "no," proceed to Question Number Three.*

**Question Number Three**

      **3(A)**  Do you find that Dominic Ovella has proven, by a preponderance of the evidence, that B & C Construction and Equipment, LLC breached the construction contract?

Answer "Yes" or "No:"  <u>  No  </u>

*Answer the remaining portion of Question Number Three only if you answered "yes" to 3A.  If you answered "no," proceed to Question Number Four.*

**Question Number Four**

      **4(A)**  Have Dominic and/or Kathleen Ovella proven by a preponderance of the evidence:

        1.  that B & C Construction breached the warranty under the Mississippi New Home Warranty Act to provide a home free from defects due to non-compliance with the building standards?

Answer "Yes" or "No:" <u>No  </u>

2.  that the home had a defect or defects due to
noncompliance with the building standards?

Answer "Yes" or "No:" <u>No</u>

3.  that the defect or defects caused the Plaintiffs'
damages?

Answer "Yes" or "No:" <u>No</u>

Verdict Form [395], *Dominic Ovella, et al. v. B & C Construction Co.*, Civil Act. No.
1:10cv285 LG-RHW.

In sum, the jury determined that: (1) B & C was not negligent in its
construction of the Ovella home; (2) B & C did not make negligent
misrepresentations to the Ovellas; (3) B & C did not breach the terms of its
construction contract with the Ovellas; and (4) B & C did not breach its warranty
under the Mississippi New Home Warranty Act.  *Id.*   The jury further concluded
that the Ovella home had no defects due to non-compliance with building standards,
and that the Ovellas did not suffer damages as a result of any alleged defects.  *Id*.

In the present case, an important distinction must be made.  The record is
clear that during the previous trial B & C's counterclaims were dismissed without
prejudice at the close of the trial.  In ruling on the parties' Motions during trial the
Court noted that:

as a practical matter, the same evidence is going to be presented in a
different case . . .  [a]nd let me make this very clear for the record so there
is no question in the future.  This is a dismissal based upon the statute
and does not serve as an adjudication on the merits. And it leaves B & C
Construction free to litigate their breach of contract claim against Mr.
Ovella in the district court.

Trial Tr. [108-8] at p. 379-380, att. as Ex. "8" to Resp. to Mot. for Summ. J.

Although the same construction contract is at issue in this case, the burden now rests with B &C to prove that Ovella breached the terms of the contract.  In order for B & C to prevail on its breach of contract claim against Ovella, B & C must prove by a preponderance of the evidence: (1) the existence of a valid and binding contract between Ovella and B & C; (2) that Ovella materially breached the contract; and (3) that as a result of the breach, B & C has suffered damages.  *Favre Property Management, LLC v. Cinque Bambini,* 863 So. 2d 1037, 1044 (Miss. Ct. App. 2004)(citing *Warwick v. Matheney*, 603 So. 2d 330, 336 (Miss. 1992)).  Because these issues were not actually determined in the context of B & C suing Ovella for breach of contract, the doctrine of collateral estoppel does not necessarily operate to bar the development of the factual bases which support B & C's claims or Ovella's defenses, so long as these defenses are not inconsistent with the jury verdict rendered in the previous litigation.

The claims asserted in the Amended Complaint mirror the counterclaims B & C asserted against Ovella in  *Dominic Ovella v. B & C Construction,* No. 1:10-CV-285 (S.D. Miss. February 15, 2012).   The Court finds that material fact questions remain surrounding the alleged breach of the construction contract by Ovella, including: (1) whether Ovella did or did not pay B & C the agreed upon contract price; and (2) the amount, if any, owed to B & C for any alleged overages, upgrades, and additions.  The Court finds that because these material fact questions remain, it is necessary for a jury to consider and resolve them.  With respect to the defenses asserted by Ovella, the prior jury verdict forecloses any argument that B &

C: (1) negligently constructed the home; (2) made negligent misrepresentations; (3) breached the construction contract; or (4) breached the warranty under the Mississippi New Home Warranty Act.  Likewise Ovella cannot argue that his home, as constructed by B & C, contained defects due to non-compliance with building industry standards or that the Ovellas suffered any damages due to alleged defects in construction.  To the extent Ovella makes these arguments, or asserts them as defenses, they are precluded and B & C's Motion should be granted in part. However, given the present posture of the case and the numerous fact questions inherent in the record, the Court is of the view that summary judgment is not appropriate as to the remaining issues raised in B & C's Motion.  Based on the foregoing, B & C's Motion for Summary Judgment on the grounds of collateral estoppel and *res judicata* will be granted in part and denied in part.

      2.    <u>Ovella's Motion for Partial Summary Judgment</u>

Ovella moves for partial summary judgment "on each of the following claims asserted by Plaintiff: 1) promissory fraud, 2) tortious breach of contract, 3) breach of duty of good faith and fair dealing, and 4) lost profits damages." Def.'s Mot. for Summ. J. [101] at p. 1.

      a.    <u>Promissory Fraud</u>

Ovella contends that the "alleged promises forming the basis of this fraud claim were non-contractual promises of future conduct; thus, they are not actionable as fraud under Mississippi law."  Def.'s Mot. for Summ. J. [101] at p. 3.  "As a matter of law, fraud cannot be predicated on promissory statements. However, fraud can be

predicated on a promissory statement where the promise is made with the present undisclosed intention not to perform the promise." *Johnson v. Bay City S. Mortgage Co.*, 928 So. 2d 888, 892 (Miss. Ct. App. 2005)(internal citations omitted). The Amended Complaint does not contain an allegation of "promissory fraud" nor has the Court been cited to any authority establishing that such a cause of action exists in Mississippi. Ovella's Motion for judgment as a matter of law on promissory fraud should be denied. To the extent that Ovella's arguments on this point are applicable to B & C's claim for breach of the duty of good faith and fair dealing and/or misrepresentation of intentions, the Court will address them together in its analysis of Ovella's request for summary judgment on those claims.

> b.    Breach of the Duty of Good Faith and Fair Dealing and Misrepresentation of Intentions

Count Two of B & C's Amended Complaint reads as follows:

> Ovella had a duty to exercise good faith and fair dealing in his business relationship and contract with B & C Construction. This duty included an obligation not to act arbitrarily in making decisions within Ovella's discretion under the terms of the contract, to deal with B & C honestly and not to conceal or misrepresent his intentions, and not to arbitrarily withhold payments due under the contract without a legitimate reason for doing so.

> Ovella intentionally misrepresented his intentions and breached his duty of good faith and fair dealing and by mis-stating his payment intentions thereby inducing forbearance in justifiable reliance on same, fabricating and/or misrepresenting "defects" with the home, refusing to specify deficiencies and desired remedies, withholding payment with no legitimate basis for doing so, and attempting to intimidate B & C through abusive language and threats.

Am. Compl. [55] at pp. 7-8.

-12-

Ovella contends that B & C has failed to establish the independent tort of breach of the duty of good faith and fair dealing and has only alleged a breach of a promise arising out of duties imposed by the contract. Ovella further maintains that B & C cannot demonstrate that Ovella acted in bad faith characterized by conduct which violates the standards of decency, fairness, or reasonableness. Def.'s Mot. for Summ. J. [101] at p. 4.

B & C responds that the record is replete with material fact questions regarding whether "Mr. Ovella's promises to B & C were contractual promises made with the present undisclosed intention of not performing. . . . [and whether] Mr. Ovella had reached a decision . . . not to pay B & C, but to string it along in order to have the work finished and get his occupancy permit." Pl.'s Resp. [113] at p. 11. In support of its fraud allegation, B & C submits the following evidence that Ovella made certain contractual promises with an intent to not perform:

> (1) his overspending of available funds leaving him with no apparent fund with which to pay B & C, (2) his continued "moving of the ball," while inducing B & C to continue work on the punch list items and louvers; (3) when the work was completed, his refusal to take B & C's calls about the monies owed for five weeks; (4) entering "negotiations" over the course of several months to try to reach an amicable resolution, but refusing to respond to or meet with B & C or its attorney to resolve the issues as requested; (5) by his filing suit without responding to B & C's good faith attempts to resolve the matter; (6) by alleging all manner of manufactured defects that were controverted by his own experts and rejected by the jury; (7) by hiring his own law firm at no cost to himself to bully B & C into foregoing the sums owed; and (8) by now, more than a year after trial, his having taken no action to correct any of the "grave" or "dangerous" defects and/or violations that he contended warranted tearing down his house.

Mem. in Supp. of Resp. [113] at pp. 11-12.

B & C argues that based upon Ovella's course of conduct coupled with his testimony given during the first trial relating to alleged construction defects and available funds for construction, the question whether he breached the contract in bad faith or breached the duty of good faith and fair dealing are factual disputes which are proper for jury resolution.

Implicit in every contract is a covenant of good faith and fair dealing in performance and enforcement. *Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992). The parties to such a contract agree that neither will do anything which will injure the right of the other to receive the benefit of the agreement. *Favre Prop. Mgmt., LLC v. Cinque Bambini*, 863 So. 2d 1037, 1045 (Miss. Ct. App. 2004)(quoting *Cothern v. Vickers*, 759 So. 2d 1241, 1248 (Miss. 2000)). "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party. The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." *Id.* at 1272 (citing RESTATEMENT (SECOND) OF CONTRACTS § 205, 100 (1979)).  Under Mississippi law bad faith requires a showing of "more than bad judgment or negligence; rather bad faith implies some conscious wrongdoing because of 'dishonest purpose or moral obliquity.'" *Limbert v. Miss. Univ. for Women,* 998 So. 2d 993, 998 (Miss. 2008)(quoting *Univ. of So. Miss. v. Williams,* 891 So. 2d 160, 170–71 (Miss. 2004); *see also JLB & Paint v. Indus. Corrosion Control, Inc.*, 2009 WL 5184457, * 3 (S.D. Miss. Dec. 22, 2009)("Court does not find any meaningful distinction between Plaintiff's bad faith argument and breach of

contract argument" where Plaintiff failed to offer evidence of bad faith other than the breach of the agreement itself)).

In the present case, the record before the Court demonstrates that material fact questions remain as to whether Ovella's actions were intentional or amounted to bad faith.  Therefore, summary judgment is inappropriate on B & C's claim for breach of the duty of good faith and fair dealing.  To the extent that B & C alleges that Ovella misrepresented his intentions, specifically that he would pay B & C when he intended not to do so, B & C must establish the following elements:

> (a) a material and false representation; (b) which is known by the speaker to be false; (c) and which is intentionally made to induce the hearer to act in reliance thereon; and (d) the hearer does act to his detriment in reasonable reliance on the false representation, and (e) the hearer consequently suffers an injury based on such reliance.

*Braidfoot v. William Carey College*, 793 So.  2d 642, 652 (Miss. Ct. App. 2000)(citing *McGee v. Swank,* 733 So. 2d 308, 312 (Miss. 1998)).

"[N]ot every spoken untruth is actionable as a fraud. It is only if that untruth was designed to, and did, in fact, induce the hearer to change his position in justifiable reliance on the untruth that it becomes potentially actionable." *Braidfoot*, 793 So. 2d at 654 (citing *McGee v. Swank,* 733 So. 2d 308, 312 (Miss. 1998)).

> In the context of summary judgment when the party has alleged fraud this Court has alluded to the notion that the cases which involve allegations of fraud or misrepresentation generally are inappropriate for disposition at a summary-judgment stage . . .  It is well established that fraud is never assumed but is essentially a question of facts [sic] which clear and convincing evidence must prove. . . .  Fraud is essentially a question of fact best left for the jury.

*Allen v. Mac Tools, Inc.,* 671 So. 2d 636, 642-43 (Miss. 1996)(internal citations omitted).

Viewing the evidence in the light most favorable to the nonmovant, the Court concludes that material fact questions remain as to whether Ovella made representations that were material and false.  Ovella's Motion should be denied as to B & C's misrepresentation of intention allegations.

        c.    <u>Tortious Breach of Contract</u>

Count Three of the Amended Complaint asserts the following "Tortious Breach of Contract" claim: "Ovella's breach of contract was willful and malicious and designed to cause damage to B & C and to B & C's business and reputation." Am. Compl. [55] at p. 8.  Under Mississippi law a claim for "tortious breach of contract requires, in addition to a breach of contract, some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort." *Banks v. S. Farm Bur. Cas. Co.*, 912 So. 2d 1094, 1098 (Miss. Ct. App. 2005)(citing *Eselin-Bullock & Associates Ins. Agency, Inc. v. National General Ins. Co.,* 604 So. 2d 236, 240 (Miss. 1992)).

Ovella contends that this claims fails as a matter of law because B & C cannot demonstrate with significant probative evidence that Ovella committed an intentional wrong or requisite similar conduct.  Def.'s Mot. for Summ. J. [101] at p. 4.  In the present case, the breach of contract claim must be resolved by a jury. Because the claims for tortious breach of contract and breach of the duty of good faith and fair dealing are intertwined with a determination of whether Ovella breached the contract, summary resolution of these claims would be improper.  In the context of this case, any findings as to whether there was an intentional wrong,

-16-

insult, abuse, or negligence so gross on the part of Ovella as to constitute an independent tort should be made by the jury in conjunction with resolving the breach of contract claim. *See Lee v. Thompson*, 43 So. 3d 1104, 1115-16 (Miss. 2010); *Occu-Health, Inc. v. Mississippi Space Svcs.,* 2008 WL 2037443, * 5 (S.D. Miss. May 9, 2008). In reaching these conclusions, the Court is guided by the principle that summary judgment should be used cautiously "when resolution of the dispositive issue requires a determination of state of mind." *Croley v. Matson Navigation Co.,* 434 F.2d 73, 77 (5th Cir. 1970).

> d.   Lost Profits

Ovella asserts that B & C's claim "for lost profits damages fails as a matter of law because the alleged damages are not a consequence of any of the claims asserted by B & C in this lawsuit, and, even assuming the alleged damages stem from one the claims in this case, they are too speculative to merit recovery." Def.'s Mot. for Summ. J. [101] at p. 4. In the Amended Complaint, B & C seeks lost profits in its prayer for relief. Am. Compl. [55] at p. 11.

> Recovery of lost profits does not require that the loss be susceptible to exact calculation. Nevertheless, the amount of the loss must be shown by competent evidence with *reasonable certainty*. While this reasonably-certain-evidence determination is a fact intensive inquiry, opinions of estimated lost profits must, at a minimum, be based on objective facts, figures, or data from which the amount of lost profits can be ascertained.

*J & B Entm't v. City of Jackson, Miss.*, 720 F. Supp. 2d 757, 764 (S.D. Miss. 2010).

The Court concludes that the issue of whether B & C sustained lost profits as a result of Ovella's conduct is inextricably intertwined with the breach of contract

claims and cannot be dismissed as a matter of law at this juncture.   Ovella's Motion for Partial Summary Judgment should be denied as to this issue.

### III. CONCLUSION

Based on the foregoing, the Court concludes that B & C's Motion for Summary Judgment should be granted in part and denied in part.  The Court further finds that Ovella's Motion for Summary Judgment should be denied as there are disputed questions of material fact requiring jury resolution.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated herein, Plaintiff B & C Construction & Equipment's Motion [96] for Summary Judgment on the basis of *res judicata* and collateral estoppel, filed March 15, 2013, pursuant to FED. R. CIV. P. 56, is **GRANTED IN PART AND DENIED IN PART** as set forth herein.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons stated herein, Defendant Dominic Ovella's Motion [100] for Partial Summary Judgment, filed March 18, 2013, pursuant FED. R. CIV. P. 56, is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 8th day of July, 2013.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE